No. 275 April 2, 2025 365

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFREY KURTZ McMAHON,
aka Jeffrey Kurtz Mc Mahon,
*Defendant-Appellant.*

Lincoln County Circuit Court
21CR25607; A180890

Sheryl Bachart, Judge.

Argued and submitted February 25, 2025.

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Megan Mizuta, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kyleigh Gray, Assistant Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

After a jury trial, defendant was convicted of unlawful sexual penetration in the first degree, ORS 163.411, and sexual abuse in the first degree, ORS 163.427. Defendant raises three assignments of error, contending that the trial court erred in (1) denying his motion to exclude statements made to a police officer in jail because the statements were not sufficiently attenuated from a prior *Miranda* violation, (2) denying his motion to exclude his DNA sample and test results from the same police encounter, and (3) denying, in part, his motion regarding terminology—specifically, in allowing the state to use the word "match" to describe the results of Y-STR DNA analysis. We affirm.

While defendant was on probation for an unrelated crime in Multnomah County, he was accused of raping a woman, A, whom he met at Apollo's, a bar in Newport. When defendant's probation officer, Hirota, learned from the Newport police that defendant was the suspect, she directed him to report to her office to discuss his activities in Newport and his (unrelated) court-ordered domestic violence class. Defendant arrived at Hirota's office as directed, and Hirota immediately read him the *Miranda* warnings. Hirota then advised defendant that she had received information that he was in Newport and was suspected of DUII. She had not, in fact, received information of a suspected DUII. Hirota told defendant that she had learned that he was in a bar drinking and later drove to a hotel—she did not mention any allegations of sexual assault. Defendant admitted to driving his truck to Newport and drinking in a bar, where he met two women, but denied driving to a hotel. Defendant told Hirota that he stayed overnight in a motel with the two women but did not disclose (and was not asked about) any sexual activity. Hirota then gave defendant a three-day jail sanction for not attending his domestic violence classes. After sanctioning defendant, Hirota called Detective Cummings and left him a voice mail advising him of the three-day jail sanction defendant was serving.

Cummings met defendant at the jail to interview him. Unlike Hirota, Cummings told defendant that he was investigating an alleged rape that occurred in Newport.

Cummings also gave defendant *Miranda* warnings, and defendant acknowledged that he understood them. Defendant admitted to spending the night with two women he met at Apollo's but denied having had sex with them. Cummings asked if defendant would take a polygraph, and defendant declined. Defendant did, however, consent to a DNA swab and swabbed his own mouth.

After conducting a Y-STR DNA analysis, the state reported that DNA from defendant's cheek matched, in five out of 23 locations on the Y chromosome, the male DNA from vaginal swabs collected from A. According to the report, that amount of similarity in DNA was likely to occur in 1 out of 189 males. Of relevance to this appeal, defendant moved to suppress his statements to Hirota, Cummings, the DNA evidence, and the Y-STR report.

The court granted the motion as to the statements made to Hirota, concluding that defendant was unable to make a knowing and intelligent waiver of his *Miranda* rights due to being deliberately misled about the nature of the investigation. However, the court denied defendant's motions as to the statements made to Cummings and the DNA evidence, and limited the manner in which the state could discuss the Y-STR report. The case proceeded to a jury trial, and defendant was convicted of unlawful sexual penetration in the first degree, ORS 163.411, and sexual abuse in the first degree, ORS 163.427.[1]

On appeal, defendant first assigns error to the trial court's denial of his motion to suppress the statements he made to Cummings in jail and the DNA evidence Cummings obtained. Specifically, defendant argues that his statements and the DNA evidence derived from the prior *Miranda* violation in Hirota's office. We disagree.

"[W]hether testimonial or physical evidence derives from a prior *Miranda* violation cannot be reduced to a mechanical formula but will vary depending on the totality of the circumstances." *State v. Swan*, 363 Or 121, 131, 420 P3d 9 (2018). The relevant considerations include: (1) "the

---

[1] Defendant was also charged with sodomy in the first degree, ORS 163.405. The jury was unable to reach a verdict on that charge, and the count was dismissed on the state's motion.

nature of the violation," (2) "the amount of time between the violation and any later statements," (3) "whether the suspect remained in custody before making any later statements," (4) "subsequent events that may have dissipated the taint of the earlier violation," and (5) "the use that the state has made" of the statements obtained from the violation. *State v. Jarnagin*, 351 Or 703, 716-19, 277 P3d 535 (2012).

The nature of the violation here—Hirota deceiving defendant and interrogating defendant despite not having obtained a knowing and intelligent waiver—was at least somewhat flagrant. However, Hirota did *Mirandiz*e defendant before questioning him, mitigating the violation. *See State v. Ward*, 367 Or 188, 201 n 9, 475 P3d 420 (2020) (noting that most *Miranda* violations, other than violations that consist solely of officers *failing* to give *Miranda* warnings when they are required to, are flagrant). As to the other factors, although defendant remained in custody following the violation, he was transported to a new location, where he was interviewed hours later by an officer from a different law enforcement entity about different topics, after fresh *Miranda* warnings. *See State v. Beeson*, 307 Or App 808, 827, 479 P3d 576 (2020), *adh'd to as modified on recons*, 309 Or App 787, 482 P3d 821 (2021) (subsequent events following *Miranda* violation, including fresh *Miranda* warnings and change in location to police station were a "clear change of circumstances * * * sufficient to remove the taint of the violation"); *cf. Ward*, 367 Or at 201 (fresh *Miranda* warnings after four days insufficient to attenuate violation of police failing to honor suspect's invocation of his rights because that violation may give the impression that assertion of one's rights is meaningless). Finally—and importantly— Cummings did not "make use" of defendant's prior statements; there is no evidence in the record that he confronted defendant with his responses. *Cf. State v. Koch*, 267 Or App 322, 334, 341 P3d 112 (2014) (suppressing statements made and evidence obtained following suspect's invocation of right to counsel when police use of statements was "inextricably intertwined" with investigation). Thus, on balance, the statements defendant made to Cummings were sufficiently

attenuated from the prior *Miranda* violation.[2] For the same reasons, the trial court correctly declined to suppress the DNA evidence that Cummings obtained.

Lastly, defendant assigns error to the trial court allowing the state's expert to use the word "match" in her testimony and her report on the DNA. Defendant argues that the word "match" should have been excluded under OEC 403, because it is highly prejudicial and risks confusing the jury. Reviewing for errors of law, *see Jennings v. Baxter Healthcare Corp.*, 331 Or 285, 300-01, 14 P3d 596 (2000) (admissibility of scientific evidence reviewed for legal error), we find no error. Specifically, the trial court instructed the state that "[n]o reference may be made as to conclusive identification," and the state's expert testified explicitly that she could not say, "at all," that the DNA obtained from the victim's rape kit came from defendant. The limiting instruction thus both reduced prejudice against defendant and the risk of confusing the jury, and the evidence was properly admitted—especially considering its highly probative value. *See State v. Lyons*, 324 Or 256, 924 P2d 802 (1996) (probative value of DNA evidence "not substantially outweighed" by danger of unfair prejudice or risk of confusion as to merit exclusion under OEC 403).

Affirmed.

---

[2] The parties dispute whether Cummings knew about defendant's statements to Hirota. However, we need not resolve that dispute because the record supports the trial court's factual finding that Cummings never made use of defendant's statements to Hirota during Cummings's questioning.