Argued and submitted November 6, 2019, reversed and remanded
January 23, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HENRY LLOYD MAST,
aka Henry L. Mast,
*Defendant-Appellant.*

Douglas County Circuit Court
18CR03904; A168339

459 P3d 938

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants and failure to perform the duties of a driver that was entered following defendant's conditional guilty plea to those crimes. Defendant assigns error to the trial court's partial denial of his motion to suppress statements that defendant made in response to interrogation by the police, as well as the results of field sobriety tests and a breath test, arguing that that evidence was obtained in violation of defendant's rights within Article I, section 12, of the Oregon Constitution. *Held*: The trial court erred when it failed to suppress (1) all of the unwarned statements made by defendant, because the trial court determined that defendant was interrogated in compelling circumstances; (2) defendant's post-*Miranda* statements, because the belatedly administered *Miranda* warnings were ineffective to ensure a knowing and voluntary waiver of defendant's Article I, section 12, rights; and (3) the results of the field sobriety tests and the breath test, because those results derived from the earlier *Miranda* violations.

Reversed and remanded.

William A. Marshall, Judge.

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants, ORS 813.010, and failure to perform the duties of a driver, ORS 811.700, entered following defendant's conditional guilty plea to those crimes. Defendant assigns error to the trial court's partial denial of his motion to suppress statements that he made in response to interrogation by the police, as well as the results of field sobriety tests and a breath test, arguing that that evidence was obtained in violation of defendant's *Miranda* rights. Because defendant was interrogated in compelling circumstances without the benefit of *Miranda* warnings, the trial court erred when it failed to suppress all of defendant's unwarned statements made in response to that interrogation. Additionally, we conclude that, because the belatedly administered *Miranda* warnings were ineffective to ensure a knowing and voluntary waiver of defendant's rights within Article I, section 12, of the Oregon Constitution, and the field sobriety tests and breath test results derived from the earlier *Miranda* violation, the trial court erred when it failed to suppress defendant's post-*Miranda* statements and the results of those tests. Accordingly, we reverse and remand.

We review the denial of a defendant's motion to suppress for legal error and are bound by the trial court's express factual findings if evidence in the record supports them. *State v. Taylor*, 296 Or App 278, 279, 438 P3d 419 (2019). We state the facts consistently with that standard. At around 1:40 a.m., on December 23, 2017, Deputy VanDrimmelen of the Douglas County Sheriff's Office was notified that the Oregon State Police had discovered a pickup truck that was crashed and abandoned on the side of a road. VanDrimmelen located the truck in a ditch. It was locked with the windows up. VanDrimmelen noticed that there were valuable items inside the truck, no keys were visible, and there was no damage to the ignition. From a license plate search, VanDrimmelen determined that defendant was the registered owner of the truck. VanDrimmelen attempted to talk to defendant at his home, but no one answered the door.

After VanDrimmelen left defendant's house, the sheriff's dispatcher informed VanDrimmelen that defendant

had reported his vehicle stolen. VanDrimmelen spoke with defendant on the phone, and defendant agreed to meet VanDrimmelen at the crash site. A friend of defendant's drove him to the site, which was in a rural location with no streetlights. VanDrimmelen arrived at the crash site after defendant along with two other deputies, Schreiber and Ruble. All three were in uniform and had firearms in plain view. Each deputy arrived in a separate police vehicle, all of which were parked at the scene. At least one of the police vehicles' overhead lights was activated.

After the deputies arrived, VanDrimmelen spoke with defendant, who appeared intoxicated and smelled of alcohol. While VanDrimmelen spoke with defendant, Schreiber and Ruble stood behind defendant to his left and right. VanDrimmelen and Schreiber recorded the conversation on their body cameras. VanDrimmelen inquired about the reported theft, but defendant had difficulty recalling when the truck was stolen. The two continued to engage in casual conversation, and defendant told VanDrimmelen that he had been drinking at an office Christmas party that evening. VanDrimmelen continued to question defendant about the reported theft and asked defendant why he waited several hours to report his truck stolen. Defendant responded that he did not report the theft until he arrived home and his wife questioned him about the missing vehicle. Shortly after that exchange, defendant volunteered that he had been drinking since 5:00 p.m. that evening. None of defendant's statements offered before this point were challenged either at trial or on appeal.

VanDrimmelen and defendant continued to speak about the truck and defendant's evening, until VanDrimmelen stepped away briefly. When he returned, VanDrimmelen told defendant that it was "only fair to be *** honest," and that he would "lay some stuff out for [defendant]." At that point, VanDrimmelen began to confront defendant with his belief that defendant had lied about the theft of his truck:

> "I'm gonna advise you of something. Okay. If I catch you in a lie, there's all sorts of, there's all sorts of other things that come, that go with that, a bunch of criminal charges and you don't want that. Okay. I'm gonna tell you right now

I've been doing this job a long time. He's been doing this job a long time. And that guy over there has been doing this job a really long time. So your truck, the, the reason I'll just tell you right now that I don't think it was stolen is it's locked. It's locked and there was no keys in it. So I, we've been down this road a bunch of times. Don't even talk. I'm gonna, I'm gonna lay some stuff out for you.

"* * * * *

"And I'm gonna give you one chance to be honest about everything and then, otherwise it's gonna turn into a whole different mess. Okay.

"* * * * *

"This neighbor over here actually witnessed a lot of things and so one of the things that I will do is I will walk over there. And so if we don't clean up this mess prior to me walking over there and he points you out as * * * the guy that left, because he's the guy that's also reported it, then we're gonna have a lot of problems.

"* * * * *

"So why don't you tell me how it really got crashed. I, it was not stolen. I, I can tell you right now it's not. I, I have been doing this job a long time.

"* * * * *

"So * * * let's clean up the mess and not do the misuse of 911 and the false report and all of that other stuff. What happened?"

At the conclusion of VanDrimmelen's statement, defendant admitted to driving. VanDrimmelen asked defendant to tell him what happened, which led to the following exchanges:

"[VanDrimmelen]:   You've been drinking and driving. And that's fair and I mean we'll just call it as it is, right?

"[Defendant]:   Yeah.

"* * * * *

"[VanDrimmelen]:   So * * * tell me about the crash. You were just driving too fast or you're just—

"[Defendant]:   I just fucked up.

"[VanDrimmelen]:    Okay. Fair enough.

"[Defendant]:    So.

"[VanDrimmelen]:    So [Deputy Schreiber] here has a few questions and he wants you to go through and he wants the same thing as honest, honest, honest."

Schreiber assumed control of the investigation from that point on, and his interactions with defendant were recorded on Schreiber's body camera. Before questioning defendant further, Schreiber read defendant his *Miranda* rights, and defendant indicated that he understood.

After asking a series of medical questions, Schreiber told defendant "I know you just told [VanDrimmelen] but, but I just want to make sure. You were at the Christmas party and having a couple of drinks. Okay. What time did you have your last drink?" Schreiber asked a series of questions about that night to determine how long defendant had been drinking and the type and quantity of alcohol he consumed, which prompted defendant to again admit that he had been drinking. Next, Schreiber asked defendant about the crash, and defendant explained that he was not paying attention to the road. Schreiber again referred to defendant's conversation with VanDrimmelen before asking defendant to perform field sobriety tests:

"And [a friend] took [you] home and then you decided to make a report and all of that stuff? And *** because you came clean we're gonna probably forget all of that stuff. You know what I mean?

"* * * * *

"But, but we have the whole drinking and driving that we've got to deal with. So do you want to [do] a couple of field sobriety tests for me?

"* * * * *

"Okay. It's up to you. I have to give you the option. If you don't want to do them, then I read you a card. I say that you refuse them and we kind of go on from there."

Defendant responded by agreeing to take the test, first asking if it would "make any difference" for the deputies. Schreiber answered, telling defendant that he believed

defendant was drunk and that the field sobriety tests were "kind of [his] opportunity to make [Schreiber] believe that [he was] not drunk." Schreiber administered the field sobriety tests, during which defendant exhibited signs of impairment. Defendant was arrested, detained in handcuffs, and transported to jail.

At the jail, Schreiber asked defendant a series of procedural booking questions before asking defendant to consent to a breath test. As part of that process, Schreiber read defendant the DMV implied consent form, which explains the penalties associated with refusing or failing a breath test in Oregon. Defendant consented to the breath test. The test, which was administered just before 4:00 a.m., indicated that defendant's blood alcohol content was above the legal limit.

Defendant was charged with driving under the influence of intoxicants and failure to perform the duties of a driver. Defendant filed a motion to suppress "all statements attributed to the defendant after [VanDrimmmelen] told [defendant], 'Let me just kind of lay some stuff out for you, okay?'" as well as "any and all derivative evidence," arguing that the circumstances became compelling after that statement, and thus required *Miranda* warnings in accordance with Article I, section 12. Defendant also challenged the adequacy of the belatedly administered *Miranda* warnings.

In response, the state argued that the circumstances were not compelling and, if the circumstances were compelling, that only the pre-*Miranda* statements should be suppressed. The state also argued that the results of defendant's field sobriety tests and breath test were not derived from the earlier *Miranda* violation.

The trial court concluded that defendant was in compelling circumstances during his conversation with VanDrimmelen "because of the implicit threats of prosecution for the false report and misuse of 911, and [VanDrimmelen] declaring that he knew that the vehicle was not stolen, with enumerated reasons." Accordingly, the court suppressed defendant's statement that he was driving. But the court did

not suppress any of defendant's other pre- or post-*Miranda* statements, the results of the field sobriety tests, or the results of the breath test. The court explained that defendant's decision to consent to the tests was not the product of the earlier *Miranda* violation, due to the "change of investigating officer and the change of the nature of questioning, plus the intervening *Miranda* warning[s]." Following the court's partial denial of his motion to suppress, defendant entered a conditional guilty plea, reserving the right to appeal the trial court's denial of his motion to suppress in accordance with ORS 135.335(3).

On appeal, defendant contends that, because VanDrimmelen failed to give *Miranda* warnings before he interrogated defendant under compelling circumstances, as required by Article I, section 12,[1] the court's failure to suppress all of defendant's unwarned statements during that conversation was error. Additionally, defendant argues that the court erred by failing to suppress evidence derived from the earlier *Miranda* violation, specifically, all statements that defendant made after the belated *Miranda* warnings administered by Schreiber, as well as the results of the field sobriety tests and the breath test.

The state concedes that the trial court erred when it failed to suppress all of defendant's unwarned statements made after the circumstances became compelling. But, the state asserts that the trial court correctly denied defendant's motion with respect to defendant's statements to Schreiber after he was given *Miranda* warnings, because those warnings, although belated, were sufficient to ensure that defendant's waiver of his *Miranda* rights was knowing and voluntary. The state also argues that the court's refusal to suppress the results of the field sobriety tests and the breath test was not error because defendant voluntarily consented to those tests. Because the resolution of each issue will affect defendant's decision on remand whether to withdraw his conditional guilty plea, both parties request that

---

[1] Defendant also argues that the Fifth Amendment to the United States Constitution requires suppression of defendant's unwarned statements. Because we address defendant's state constitutional argument first, and reverse on that basis, we do not reach defendant's federal constitutional argument. *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981).

we address the admissibility of all the challenged evidence in this case. We do so below.

Article I, section 12, provides that "[n]o person shall be *** compelled in any criminal prosecution to testify against himself." To protect a person's right against compelled self-incrimination under that section, police must give *Miranda* warnings before interrogating a suspect who is in custody or compelling circumstances. *State v. Nichols*, 361 Or 101, 107, 390 P3d 1001 (2017). *Miranda* warnings are required "to ensure that a waiver of the rights conferred by Article I, section 12, is knowing as well as voluntary." *State v. Vondehn*, 348 Or 462, 480, 236 P3d 691 (2010). If the police fail to give *Miranda* warnings to a suspect in custody or compelling circumstances, all statements made in response to unwarned questioning must be suppressed. *State v. Grimm*, 290 Or App 173, 178, 414 P3d 435, *rev den*, 363 Or 283 (2018).

As noted, the trial court concluded that defendant was in compelling circumstances, specifically pointing to VanDrimmelen's insistence that the vehicle was not stolen and the "implicit threats of prosecution for the false report and misuse of 911." The state does not challenge the court's conclusion that defendant was in compelling circumstances. Accordingly, the state concedes that the court erred when it failed to suppress all of defendant's unwarned statements. We agree and accept the state's concession.

We turn to the remaining evidence defendant seeks to suppress, beginning with the statements that defendant made after Schreiber belatedly administered *Miranda* warnings. Whether post-*Miranda* statements must be suppressed when the *Miranda* warnings are belatedly given turns on whether the state has established that the warnings were "effective." *Vondehn*, 348 Or at 480. The Supreme Court has explained that, to determine whether belatedly administered *Miranda* warnings are effective, we consider "all relevant circumstances," including

"the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the statements given by the suspect, the timing and setting of the first and second interrogation sessions,

the continuity of police personnel, the degree to which the interrogator's questions treated the second round of interrogation as continuous with the first, and whether the police cautioned that the earlier unwarned statement could not be used in any subsequent prosecution."

*Id*. at 482. The focus of that inquiry is "not on the subjective intent of the police but on the objective message that the police actually convey by the techniques that they use and the warnings that they give." *Id*. at 483.

Applying that holding in *Vondehn*, the court determined that the state had established that the belated *Miranda* warnings were effective. *Id*. at 486. There, the police arrested the defendant and placed him in the back seat of a patrol car. The officer then asked the defendant whether he owned a backpack found in the car in which defendant had been riding and whether it contained marijuana. The defendant answered yes to both those questions. At the officer's request, the defendant also consented to a search of the backpack, which yielded incriminating evidence. After consulting with another officer for five minutes, the officer gave the defendant *Miranda* warnings and continued to question him. *Id*. at 483-85.

In determining that the *Miranda* warnings were effective to ensure that the defendant made a knowing and voluntary waiver of his Article I, section 12, rights, the court observed that the unwarned questioning lasted less than a minute and was "routine in nature," whereas the warned questioning was "significantly more detailed and probing." *Id*. at 485. Further, there was a break between the rounds of questioning that was sufficient to indicate that "the situation had changed," given the brevity of the first set of questions. *Id*. The court also noted that, although the officer did not caution the defendant that his unwarned statements could not be used against him, he did not indicate to the defendant that he had all the incriminating information necessary for a prosecution. *Id*. at 486.

In contrast to the circumstances in *Vondehn*, in *State v. Edgar*, 297 Or App 193, 205, 441 P3d 234 (2019), we determined that belated *Miranda* warnings were ineffective to obtain a waiver from the defendant of his Article I,

section 12, rights. In that case, two deputies pulled the defendant over for a traffic violation. During that stop, the deputies saw a plastic bag that appeared to contain a drug-like substance. When the defendant declined to acknowledge the existence of the bag, the deputies forced the defendant to exit his vehicle at taser point. The deputies asked the defendant what was in the bag, and the defendant gave an incriminating response. At that point, the deputies gave *Miranda* warnings to the defendant, and repeated that same question, followed by several more, to which the defendant responded. *Id*. at 196-97.

We concluded that the deputies did not "present defendant with an opportunity to make a genuine and informed choice of whether to subsequently waive his Article I, section 12, rights." *Id*. at 205. In so concluding, we observed that the effectiveness of belated *Miranda* warnings exists on a spectrum: "[O]n the one end, the unwarned and warned interrogations blend into one continuum, and at the other, they present markedly different experiences." *Id*. at 200 (internal quotation marks and brackets omitted). Although the first unwarned interrogation was "very short" and the second warned interrogation was "significantly broader and lasted much longer," the other relevant factors and circumstances weighed against finding that the warnings were effective. *Id*. at 203. In particular, we noted that "there was no break in time" between the unwarned and warned interrogations, the defendant "remained in the coercive circumstance of being ordered out of his vehicle at taser point," and "the same deputies continued to ask defendant questions along the same line of their unwarned inquiry." *Id*. at 205.

Returning to defendant's post-*Miranda* statements here, the state contends that the *Vondehn* factors weigh against suppression, highlighting the difference in completeness and detail of the questions and answers between the first and second rounds of interrogation and the change of police personnel. We acknowledge that the questions posed by VanDrimmelen were fewer and less detailed than those posed by Schreiber. But, unlike the questioning in *Vondehn*, VanDrimmelen's questioning was not "routine

in nature." Rather, it consisted of a lengthy explanation of VanDrimmelen's belief that defendant had lied and made a false police report about a stolen car, was likely guilty of driving while intoxicated, and was subject to additional criminal penalties unless he confessed. In addition, defendant's inculpatory statements to each officer were the same in substance. Although Schreiber's questioning revealed more about the type and quantity of alcohol that defendant had consumed, defendant's most important admissions—that he was drinking at a Christmas party, attempted to drive home, and ultimately crashed his truck—were the same.

The state is correct that, with respect to the questioning, there was a change in the police personnel. But that change was significantly undercut by the fact that Schreiber was present for defendant's entire conversation with VanDrimmelen, and Schreiber referred back to that conversation more than once while he questioned defendant. By referencing the previous round of questioning, Schreiber communicated to defendant that he was present and had heard the admissions that defendant made moments earlier. And, Schreiber's comment that defendant would likely not be subject to criminal penalties for his false report because he "came clean" was directly related to VanDrimmelen's prior implicit threats of prosecution to obtain defendant's confession. Those references served to create a continuous line of questioning, erasing any "break" between the unwarned and warned questioning that the change in personnel might otherwise have provided.

Further, the first and second rounds of interrogation occurred at the same place and with no break in time. Immediately after defendant admitted to drinking and driving, and told VanDrimmelen that he "fucked up," VanDrimmelen introduced Schreiber into the conversation. And, considering VanDrimmelen's insistence that Schreiber wanted "the same thing as honest, honest, honest" at that moment of transition, the two rounds of questioning were not "markedly different experiences" but "blend[ed] into one continuum." *Edgar*, 297 Or App at 200.

Finally, neither VanDrimmelen nor Schreiber cautioned defendant that his earlier unwarned statements could

not be used in any subsequent prosecution. Although not required, such a caution might have created a more meaningful opportunity for defendant to "make a genuine and informed choice" of whether to waive his Article I, section 12, rights. *Id.* at 205. Therefore, we conclude that the belatedly administered *Miranda* warnings were not effective to ensure a knowing and voluntary waiver of defendant's Article I, section 12, rights. Thus, the trial court erred when it declined to suppress defendant's post-*Miranda* statements that he made to Schreiber.

The final issue is whether the trial court erred in failing to suppress the results of the field sobriety tests and the breath test. Defendant contends that the results of those tests derived from the preceding *Miranda* violation, because his decision to perform each test was "causally connected to the officers' illegality." Conversely, the state argues that defendant's consent to perform the field sobriety tests and the breath test was voluntary and thus sufficient to attenuate the taint of the preceding *Miranda* violation.

When an officer violates a defendant's *Miranda* rights, we suppress not only statements made directly in response to the unwarned questioning, but also "evidence that derives from or is a product of that constitutional violation." *State v. Jarnagin*, 351 Or 703, 713, 277 P3d 535 (2012). To determine whether evidence derives from an earlier *Miranda* violation, we examine the totality of the circumstances, including

> "the nature of the violation, the amount of time between the violation and any later statements, whether the suspect remained in custody before making any later statements, subsequent events that may have dissipated the taint of the earlier violation, and the use that the state has made of the unwarned statements."

*Id.* at 716.[2] Because defendant consented to perform the field sobriety tests and the breath test, we look to the *Jarnagin*

---

[2] Although applying some similar factors, the analysis set forth in *Jarnagin* differs from the analysis in *Vondehn* to determine the effectiveness of belated *Miranda* warnings to remedy an earlier *Miranda* violation. *See Jarnagin*, 351 Or at 716 n 8 (noting that the analysis for determining whether evidence derives from an earlier *Miranda* violation "does not apply to statements made in direct response to questions posed in violation of *Miranda*" and that "a different calculus

factors to determine whether defendant's decision to perform those tests "broke the causal chain between the prior Article I, section 12, violation" and the test results. *State v. Swan*, 363 Or 121, 131, 420 P3d 9 (2018). The state bears the burden of production and persuasion to show that defendant's decision to consent was not the product of the earlier violation of defendant's Article I, section 12, rights. *Id*. at 133. The following case illustrates that analysis.

In *Taylor*, we concluded that the state failed to prove that the defendant's decision to take a breath test did not derive from the earlier violation of that defendant's Article I, section 12, rights. 296 Or App at 296. There, the officer arrested the defendant for driving under the influence of intoxicants and administered *Miranda* warnings. *Id*. at 281. The defendant told the officer that she did not understand the warnings. At that point, the officer conducted a standardized alcohol influence interview and read the implied consent form to the defendant. Ultimately, the defendant consented to a breath test. *Id*. at 281-82. First, we explained that, because the defendant did not understand the *Miranda* warnings, she could not validly waive her rights, and, therefore, the statements that she made were presumptively involuntary. *Id*. at 285-86. Next, we looked to the *Jarnagin* factors to determine whether the defendant's consent to the breath test was derived from that *Miranda* violation. Although we did not consider the nature of the violation particularly flagrant, the amount of time between the interview and the breath test, and the fact that the defendant remained in custody weighed in favor of suppression. *Id*. at 288-92. And notably, we were not persuaded that the implied consent form for the breath test dissipated the taint of the violation. *Id*. at 294. Ultimately, we concluded that the interview and the breath test were "part and parcel of the same DUII protocol; both were administered in the same custodial setting, by the same officer, and were designed to gather evidence of defendant's impaired driving, as admitted in defendant's unlawfully

applies when a defendant remains in custody and officers seek to remedy an earlier *Miranda* violation"). The parties do not dispute that the *Jarnagin* test applies to whether the trial court should have suppressed the results of the field sobriety and breath tests.

elicited inculpatory statements." *Id*. at 295. Thus, the defendant's "admissions that she had been drinking and should not have been driving left little of incriminating potential unsaid, other than her precise BAC and were inextricably intertwined with [the officer] seeking, and obtaining, the breath test results." *Id*. at 295-96 (internal quotation marks omitted).

Applying the *Jarnagin* factors in this case, we conclude that both the field sobriety tests and breath test results derived from the earlier *Miranda* violation. Although the field sobriety tests and breath test were administered at different times and locations, those differences do not significantly affect our analysis given the continuous nature of the encounter. Therefore, we analyze both the field sobriety tests and breath test together.

Beginning with the nature of the violation in this case, it is significant that VanDrimmelen obtained defendant's cooperation by impliedly threatening to arrest defendant for additional crimes. Although Schreiber later told defendant that they would not pursue additional charges because defendant had "come clean," defendant's "coming clean" was the confession that the officers obtained in violation of his Article I, section 12, rights. As a result, defendant's decision to consent to each test was likely tainted by the "specter of arrest" for other charges used to gain his cooperation during the initial investigation. *State v. Heise-Fay*, 274 Or App 196, 209-10, 360 P3d 615 (2015) (holding that consent to search was not voluntary where it was the product of ongoing *Miranda* violations that included a threat to arrest the defendant unless she cooperated).

With regard to the other *Jarnagin* factors, the state concedes that the temporal and custodial factors weigh in defendant's favor. As in *Taylor*, there was no meaningful change in time or circumstance between the *Miranda* violation and defendant's performance of each test. The entire encounter lasted less than two hours, from the time defendant arrived at the scene through defendant's participation in the field sobriety tests and to the administration of the breath test at the jail. Defendant remained in compelling circumstances throughout the encounter.

The state argues, however, that the *Miranda* warnings, as well as Schreiber's explanations to defendant that his decision to perform each of the tests was voluntary, dissipated the taint of the earlier violation. Given, as we discussed above, that the recitation of *Miranda* rights here did not sufficiently inform defendant of those rights, we are not persuaded that they attenuated the taint of the violation with respect to the field sobriety and breath tests. And, before the breath test, Schreiber's request for consent was simultaneous with his reading of the implied consent form, which we considered insufficient to attenuate the taint of the violation in *Taylor*. *See also Swan*, 363 Or at 135-36 (observing that, although "advising a DUII suspect of the consequences of refusing to take a breath test [does] not render the suspect's decision to take the breath test involuntary," doing so "is intended to weight the suspect's decision towards taking the test").

Lastly, we look to the state's use of the unwarned statements to "consider what use the police made of the suppressed statements in obtaining the [field sobriety and] breath test results." *Taylor*, 296 Or App at 295 (internal quotation marks omitted). Here, defendant admitted that he had been drinking and driving prior to his crash and that he "fucked up." Those admissions "left little of incriminating potential unsaid" beyond the quantity of alcohol defendant consumed and the duration of that consumption. *Id*. As in *Taylor*, both the field sobriety and breath tests were "designed to gather evidence of defendant's impaired driving, as admitted in defendant's unlawfully elicited inculpatory statements." *Id*. That is, the tests were designed to obtain additional evidence to confirm what defendant had already admitted.

Further, as we explained above, Schreiber was present for and heard the entire conversation between defendant and VanDrimmelen. Schreiber referenced defendant's conversation with VanDrimmelen more than once before asking defendant to perform the field sobriety tests. In doing so, Schreiber informed defendant that Schreiber was aware of defendant's prior inculpatory admissions to VanDrimmelen and believed defendant was intoxicated. As a result,

defendant's decisions to consent to the field sobriety tests and the breath test were potentially affected by both the inculpatory nature of defendant's unwarned statements and defendant's awareness that Schreiber had heard them. *See Swan*, 363 Or at 132 (explaining that a defendant's inculpatory answers to unwarned interrogation are more likely to affect a defendant's decision to take a breath test, whereas a defendant's exculpatory answers to unwarned interrogation are less likely to affect a defendant's decision to take a breath test). Thus, defendant's admissions that he had been drinking and driving prior to his crash "were inextricably intertwined with [Schreiber] seeking, and obtaining" both the field sobriety and breath test results. *Taylor*, 296 Or App at 295-96.

In sum, we conclude that (1) the trial court erred when it failed to suppress all of the unwarned statements defendant made to VanDrimmelen, because the trial court determined that defendant was interrogated by VanDrimmelen in compelling circumstances; (2) the trial court erred when it failed to suppress defendant's post-*Miranda* statements, because the belatedly administered *Miranda* warnings were ineffective to ensure a knowing and voluntary waiver of defendant's Article I, section 12, rights; and (3) the trial court erred when it failed to suppress the results of the field sobriety tests and the breath test, because those results derived from the earlier *Miranda* violations.[3]

Reversed and remanded.

---

[3] Because defendant entered a conditional guilty plea, we do not engage in a harmless error analysis. *Taylor*, 296 Or App at 297.