Submitted June 26, 2019, affirmed December 30, 2020

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## EDWARD KEIKIOKALANI ALAPAI,
*Defendant-Appellant.*

### Polk County Circuit Court
### 16CR75229; A166241

480 P3d 968

Defendant appeals a judgment of conviction for driving under the influence of intoxicants, ORS 813.010, and reckless driving, ORS 811.140. On appeal, defendant contends that the trial court erred by partially denying his motion to suppress statements made to police officers and the results of two field sobriety tests and a breath test. Defendant contends that, because the trial court determined that the first officer on the scene violated defendant's *Miranda* rights, defendant's statements to the second officer and the results of the subsequent field sobriety and breath tests should also have been suppressed. The state argues that the taint of any *Miranda* violation was sufficiently attenuated. *Held*: The record is sufficient to support the trial court's conclusion that defendant's initial, unwarned statement to the second officer was voluntary and its conclusion that the belated *Miranda* warnings the second officer provided were sufficient under the circumstances to effectively inform defendant of his constitutional rights. Accordingly, the trial court did not err by denying defendant's motion to suppress as it pertained to defendant's statements to the second officer and the results of the field sobriety and breath tests.

Affirmed.

Norman R. Hill, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Mooney, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

KAMINS, J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, and reckless driving, ORS 811.140. Defendant executed a conditional guilty plea after the trial court partially denied his motion to suppress statements that he made to police officers and results of two field sobriety tests and a breath test. Defendant assigns error to the trial court's partial denial of his motion to suppress, contending that, because the trial court determined that the first officer on the scene violated defendant's *Miranda* rights, defendant's statements to the second officer and the results of the field sobriety and breath tests should also have been suppressed. Because we conclude that the court did not err, we affirm the judgment.

## I.  STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress for legal error. *State v. Heise-Fay*, 274 Or App 196, 201, 360 P3d 615 (2015). In conducting that review, "[w]e state the facts consistently with the trial court's factual findings that are supported by sufficient evidence in the record and its decision denying defendant's motion to suppress." *Id.* at 198.

## II.  BACKGROUND

Defendant was the driver in a motor vehicle accident in Independence, Oregon, and he fled from the scene. In response to a notification from dispatch, Dallas Police Officer Van Meter used defendant's license plate number to find defendant's home address in Dallas, Oregon, and went to his house to wait for him. When defendant arrived, Van Meter noticed damage to the front end of defendant's car consistent with the reported crash and observed that defendant's car had the same license plate number as reported by dispatch. Van Meter turned on his overhead lights and pulled onto the street to stop defendant. Defendant parked in his driveway and got out of his car, and Van Meter instructed him to stay outside the vehicle and not reach back inside it. Van Meter then conducted a full-body frisk for weapons and asked for defendant's identification. Van Meter asked defendant "if he

was involved in a little crash in Independence," and defendant admitted that he had been.

While talking with defendant, Van Meter noticed that defendant's "speech, the way he was talking, [and] his general demeanor" indicated that he was likely intoxicated. Van Meter then questioned defendant about his alcohol consumption, including how much he had drunk that evening and what time he began drinking. Defendant admitted that he had consumed at least six beers and also agreed that it was possible that he might have drunk more than that. Van Meter asked defendant if he had been arrested for DUII before, and defendant admitted that he had, "many times." At that point, Van Meter informed dispatch that he planned to conduct field sobriety tests, but he was told to wait for Independence Police Officer Rumsey, who would lead the investigation. While they waited for Rumsey, Van Meter made casual conversation with defendant about unrelated topics, including music and his family. Another police officer arrived at defendant's house and stood watch but did not engage with defendant. Van Meter did not give defendant *Miranda* warnings at any point in their conversation.

Rumsey arrived on the scene about 10 minutes after Van Meter stopped defendant. Van Meter remained on the scene, acting as a cover officer, but he stopped speaking directly with defendant. When Rumsey arrived, he saw that defendant was "visibly intoxicated," observing that defendant was "swaying while standing[, and] he had bloodshot, watery eyes [and] slurred speech." Rumsey introduced himself to defendant and told defendant that he did not know what defendant and Van Meter had discussed. Defendant responded by telling Rumsey that he had run from the scene of an accident. Rumsey, who was aware that Van Meter had not given defendant *Miranda* warnings, then administered *Miranda* warnings.

After defendant stated that he understood his rights, Rumsey questioned him about his alcohol consumption and then asked him to submit to field sobriety tests. Defendant failed those tests, and Rumsey then arrested him. After the arrest, defendant consented to a breath test, which showed that his blood-alcohol content was 0.17 percent.

Before trial, defendant moved to suppress his statements to both Van Meter and Rumsey, as well as the results of the field sobriety tests and the breath test. The state opposed the motion, arguing that there was no *Miranda* violation because the circumstances of the police encounter were not compelling and that, even if there were a violation involving Van Meter, it would not require suppression of defendant's statements to Rumsey or the test results. The trial court granted defendant's motion as to his statements to Van Meter and denied it as to his statements to Rumsey and as to the field sobriety and breath test results. In ruling on defendant's motion, the trial court found that Van Meter violated defendant's rights by interrogating him under compelling circumstances without giving him *Miranda* warnings. The trial court came to that conclusion because, although defendant was stopped outside his home, (1) Van Meter was in uniform and carrying a weapon; (2) it was night time; (3) Van Meter began the encounter by using his overhead lights to pull defendant over; and (4) Van Meter ordered defendant not to return to his car.

In contrast, the trial court found that defendant's statement to Rumsey that he ran away from the accident "was entirely 'volunteered' because it was not in response to any question posed by Rumsey" and "was volitional sufficient to attenuate any taint." Additionally, the trial court ruled that defendant's post-*Miranda* statements and the results of the field sobriety and breath tests "were not the product of the earlier violation" because (1) there was no continuity between the questioning; (2) Rumsey was not present for the discussion between Van Meter and defendant, and there was no evidence that Rumsey knew anything about the substance of their conversation; (3) Rumsey began his conversation with defendant by providing *Miranda* warnings; (4) there was a break between the questioning sessions; (5) the initial circumstances were "barely custodial"; and (6) there was no evidence that Rumsey used Van Meter's questioning as part of his investigation.

On appeal, the parties renew the arguments they made to the trial court. Defendant argues that the trial court should have suppressed not only all unwarned statements to Van Meter, but also all subsequent statements to

Rumsey and the results of the field sobriety and breath tests. In response, the state argues that the taint of any *Miranda* violation was sufficiently attenuated.

### III.   ANALYSIS

Article I, section 12, of the Oregon Constitution provides that "[n]o person shall be \*\*\* compelled in any criminal prosecution to testify against himself." To protect a person's right against compelled self-incrimination, police officers "must provide *Miranda* warnings to a suspect before interrogating that suspect if the suspect is either in 'full custody' or in 'compelling circumstances.'" *State v. Courville* 276 Or App 672, 677, 368 P3d 838 (2016) (quoting *State v. Roble-Baker*, 340 Or 631, 638, 136 P3d 22 (2006)). For the purposes of Article I, section 12, "interrogation refers to statements or questions, other than questions normally attendant to arrest and custody, that are reasonably likely to elicit an incriminating response." *State v. Swan*, 363 Or 121, 124, 420 P3d 9 (2018) (internal quotation marks omitted). Because defendant was in compelling circumstances when Van Meter questioned him,[1] we must decide both whether Rumsey violated defendant's constitutional rights before he provided defendant *Miranda* warnings and whether any *Miranda* violation by either officer was sufficiently attenuated to allow the admission of defendant's post-*Miranda* statements to Rumsey and the results of the field sobriety and breath tests.

### A.   *Defendant's Unwarned Statement to Officer Rumsey*

Defendant contends that Rumsey violated his constitutional rights by interrogating him before providing *Miranda* warnings when, upon arriving to the scene, he introduced himself and said to defendant, "I don't know what you [and Van Meter] have talked about before I got here." Defendant contends that Rumsey's statement was an interrogation because "given the circumstances, it was

_____

[1] The state asserts that no *Miranda* violation occurred at all, presenting an alternative basis to affirm the trial court's denial of defendant's motion to suppress evidence of his statements to the second officer and the results of the field sobriety and breath tests. Because we ultimately reject defendant's challenge to the trial court's partial denial of the suppression motion, we need not reach the state's alternative argument.

likely to elicit an incriminating response." Consequently, defendant argues that his response to Rumsey's statement, that he "ran away from a crash in Independence," should have been suppressed.

In response, the state points out that the trial court made a factual finding that defendant's unwarned statement to Rumsey was "unprompted"; that is, the court "viewed Officer Rumsey's statement—that he did not know what defendant had told Officer Van Meter—as not causing defendant to say that he had been involved in a car accident."

The record is sufficient to support the trial court's finding that defendant's pre-*Miranda* statement to Rumsey was unprompted as a factual matter, and, therefore, Rumsey did not violate defendant's constitutional rights by making the statement that he did not know what defendant had discussed with Van Meter. *See State v. Mast*, 301 Or App 809, 810, 459 P3d 938 (2020) (We "are bound by the trial court's express factual findings if evidence in the record supports them."). The trial court was in the best position to evaluate the tone of the encounter that Rumsey described in his testimony as to his initial interaction with defendant. Further, because the record supports the trial court's finding that defendant's statement was not elicited by Rumsey, the record also supports the trial court's conclusion that defendant's statement was voluntary and therefore not barred by either the state or federal constitutions. Indeed, "[t]he concept of a volunteered statement has a unique place in *Miranda* jurisprudence," *State v. Delong*, 357 Or 365, 375, 350 P3d 433 (2015), and "[v]olunteered statements of any kind are not barred by the Fifth Amendment," *Miranda v. Arizona*, 384 US 436, 478, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

B.   *Defendant's Warned Statements to Officer Rumsey and the Subsequent Field Sobriety and Breath Test Results*

We next address whether the belated *Miranda* warning that Rumsey gave defendant after his unprompted statement was sufficient under the circumstances to allow the admission of defendant's subsequent statements and test results despite the earlier *Miranda* violation involving Van Meter. Generally, when there is a belated *Miranda* warning,

"a trial court must exclude defendant's warned post-*Miranda* statements unless the state establishes that, considering the totality of the circumstances, when the police belatedly administer[ed] *Miranda* warnings, they effectively and accurately informed the defendant of his or her Article I, section 12, rights." *State v. Vondehn*, 348 Or 462, 467, 236 P3d 691 (2010). The belated warnings must accomplish that informational purpose because "[t]he Oregon Constitution requires *Miranda* warnings to ensure that a waiver of the rights conferred by Article I, section 12, is knowing as well as voluntary," not to "deter illegal police conduct." *Id.* at 480.

We evaluate whether the belated warnings were effective—or, in contrast, whether the subsequent warned statements were "the product of an earlier *Miranda* violation"—by considering "all relevant circumstances," which include (1) "the nature of the violation"; (2) "the amount of time between the violation and any later statements"; (3) "whether the suspect remained in custody before making any later statements"; (4) "subsequent events that may have dissipated the taint of the earlier violation"; and (5) "the use that the state has made of the unwarned statements." *State v. Jarnagin*, 351 Or 703, 716, 277 P3d 535 (2012) (internal quotation marks omitted). Moreover, the "test of the efficacy of the belated warnings is an objective one," and we do not focus on either the subjective effect of the belated warnings on the suspect or the subjective intent of the police. *Vondehn*, 348 Or at 482-83.

Applying that framework here, we conclude that Rumsey's belated *Miranda* warnings were effective. The compelling nature of the circumstances was a close call in this case—"barely custodial," as the trial court noted—and the constitutional violation was not egregious or flagrant. *See State v. Ward*, 367 Or 188, 201 n 9, 475 P3d 420 (2020) (describing the circumstances in which a *Miranda* violation is "not especially flagrant" as those "violations that consist of the officers fail[ing] to recognize that the circumstances had become sufficiently compelling to require *Miranda* warnings" (internal quotation marks omitted; alteration in original); *cf. State v. Beeson*, 307 Or App 808, 824, 479 P3d 576 (2020) (concluding that a *Miranda* violation was not flagrant or egregious when officers administered field sobriety

tests to a defendant without providing *Miranda* warnings after the defendant jumped out of his truck and attempted to confront the victim of a hit-and-run). Indeed, after Van Meter questioned defendant without giving him *Miranda* warnings, Van Meter learned that he needed to wait for Rumsey to conduct further investigation. Accordingly, while they both waited for the investigation to resume, Van Meter shifted to noninvestigative small talk subjects, including defendant's history of living in Hawai'i and interest in playing guitar.

Although the time between the violation and the later statements was brief, Rumsey's arrival on the scene—taking over the investigation from Van Meter, stopping the casual conversation, and stating that he did not know what defendant had discussed with Van Meter—broke any continuity with Van Meter's questioning. And, when defendant responded by volunteering that he had been in a car accident, Rumsey immediately informed defendant of his *Miranda* rights, giving "an objective indication that the situation had changed and was governed by new rules." *See Vondehn*, 348 Or at 485-86 (describing the circumstances required for a belated *Miranda* warning to be effective); *see also Beeson*, 307 Or App at 826-27 (police officer "clearly communicated to defendant that he had the right to remain silent" when the officer "did not permit defendant to interrupt and make any statements" while the officer was giving a belated *Miranda* warning). Moreover, Rumsey did not use defendant's unwarned statements against him—indeed, Rumsey did not even know that defendant had made incriminating statements to Van Meter. *See Vondehn*, 348 Or at 486 (describing the use of unwarned statements as a factor weighing against the efficacy of belated *Miranda* warnings).

We acknowledge that there are some facts that weigh against our conclusion that Rumsey's *Miranda* warnings were constitutionally adequate, such as the continued presence of Van Meter on the scene; the breadth of subject matter of Van Meter's unwarned questioning, which covered defendant's involvement in the crash, alcohol consumption, and history of driving under the influence; the lack of change in the physical circumstances of defendant being detained by two uniformed police officers; and defendant's

continued inability to terminate the encounter. However, the totality of the circumstances, particularly the reset that occurred when a new officer arrived, introduced himself, and informed defendant that he was not aware of any statements, incriminating or otherwise, that defendant had made to the first officer, dissipated the taint from the prior *Miranda* violation such that defendant was able to make a knowing waiver of his rights when he answered Rumsey's post-*Miranda* questioning. Accordingly, the trial court did not err when it denied defendant's motion to suppress his post-*Miranda* statements to Rumsey.

We use the same framework and reach the same conclusion with respect to the results of the field sobriety and breath tests. When a "defendant consent[s] to perform *** field sobriety tests and *** breath test[s], we look to the *Jarnagin* factors to determine whether defendant's decision to perform those tests broke the causal chain between the prior Article I, section 12, violation and the test results." *Mast*, 301 Or App at 820-21 (internal quotation marks omitted); *see Jarnagin*, 351 Or at 713 (When an officer obtains physical evidence in violation of Article I, section 12, the court suppresses "not only statements that a suspect makes in direct response to unwarned questioning but also evidence that derives from or is a product of that constitutional violation."). As we have already observed, Rumsey's arrival and subsequent *Mirandized* questioning attenuated the taint of Van Meter's unwarned questions. Defendant consented to the tests after receiving properly administered *Miranda* warnings. Accordingly, the trial court did not err when it denied defendant's motion to suppress the results of the field sobriety and breath tests.

In sum, the trial court did not err by denying defendant's motion to suppress as it pertained to his statements to Rumsey and the results of the field sobriety and breath tests.

Affirmed.